Williams v. Aguirre. Mr. Ramey, may it please the court. This is Travis Ramey for the appellants Daniel Aguirre and Richard Kaluska. I would like to focus on two reasons the district court should have granted summary judgment to the officers. First, there was arguable probable cause to charge Mr. Williams with attempted murder. And second, it's not clearly established that the officers can be liable for malicious prosecution despite the undisputed existence of probable cause to charge Mr. Williams with another crime. I begin with the existence of arguable probable cause for attempted murder because if the court accepts our argument on that issue, if the case is over, it would eliminate both of Mr. Williams' existing claims. This court is undoubtedly aware arguable probable cause exists when reasonable officers with the same knowledge and in the same circumstances could believe that there is a probability or substantial chance of criminal activity here, the criminal activity being attempted murder. This is an objection to that. I think to me the problem here is that, I mean, we the plaintiff's version of event and under his version, no officer ever saw his gun in motion. It slid out of the bag as he was slowly going down on his hands and knees, which was before he rolled over to face Aguirre. And then the gun was on the ground. He didn't think the officers could even see it. When Williams saw the gun, the next thing that happened was he turned and officer Aguirre presumably saw the gun and shot him. It seems to me that we have to accept that version of what happened. Your Honor, I agree that that's the simple fact that the gun comes out because guns don't have volition. They can't move on their own, typically. And no officer saw how the gun came out. Can't they move using gravity? Well, sure, it could have been gravity, but a reasonable officer could also conclude that it is probable that there is a possibility or a substantial chance that the gun came out because we have to Williams drew the weapon. That is a reasonable conclusion for an officer to draw under these facts, particularly given the circumstances, that they were in a dangerous place, it was dark, it was late at night, a robbery had taken place nearby, and an active physical altercation was ongoing or had just happened between Mr. Williams' companion and the other officer that ultimately resulted in Mr. Brown being tased. So given this totality of circumstances, it would be reasonable for the officer to assume that the gun was, or to conclude that the gun... I just don't see how just the presence of a gun on the ground is enough to give them the reasonable belief that the suspect pulled the gun on them with the intent to murder them. Your Honor, again, probable cause, of course, this could be wrong. The officer could be incorrect in drawing their conclusion, but it does seem that it's enough evidence because, again, guns don't typically jump out on their own, and it would be an odd coincidence for a gun to just fall out in the middle of an ongoing physical altercation right in Mr. Williams' easy grasp. I think that a reasonable officer under these circumstances could draw the inference that the gun is out because Mr. Williams took the gun out. And if the court allows that inference, then everything else follows, that that is an overt act towards attempted murder. If Mr. Williams, if hypothetically Officer Geary had seen Mr. Williams draw the gun, we know from the possessive force context that he would be justified in using deadly force because he would be allowed to infer that Mr. Williams took the gun out with the intent to shoot someone. So a police officer can shoot someone if they see a nearby gun no longer in the suspect's possession that the suspect, they theorize, could have a few moments ago taken out of his pocket? Your Honor, I believe there are cases that allow the use of deadly force because of the presence of a weapon within easy grasp of a suspect. Do you have a case allowing the use of force in the scenario that I just described? Your Honor, I don't offhand, but I'd be happy to provide one in a supplement, but that's my memory of this case law. Even if you had a case with the facts that Judge Grant described, you don't have one where the victim of the shooting is telling the officer, I've got a gun, I've got a gun, as he's being trying to make sure he is most favorable to Mr. Williams here, and he says that he was attempting to tell the officers that he had a gun so they would know. I agree Judge Antion that those are the summary judgment facts, but if you look at Doc 79-7 at page 25, in Mr. Williams' own testimony, he said I was saying I've got a gun, but he was saying that Officer Geary either didn't hear him or didn't appreciate what he was saying because he was, quote, so amped up. So even Williams' testimony acknowledges that he may have made the statement, but that Officer Geary didn't hear or understand it. So there's still no knowledge of the presence of the weapon. The court could infer intent, the other real element of attempted murder simply from these circumstances and the involvement of a deadly weapon, but importantly, no one here has pointed to a case, at least that I've seen and I'm not aware of a case, that rules out probable cause under these circumstances. So we think the court can grant qualified immunity to the officer simply on the basis of the existence of arguable probable cause for attempted murder. Regardless of that issue, the second issue the court doesn't necessarily have to reach is the existence of, undisputedly, of probable cause to charge Mr. Williams with the crime of carrying a concealed weapon without a permit. This is a qualified immunity issue. The Tenth Circuit, then Judge Gorsuch in the Vandeway decision, granted qualified immunity on this very issue. Other courts have followed. Again, it's undisputed that there was probable cause to charge him with the gun violation. It would have to be clearly established that the officers could be liable for malicious prosecution under these circumstances and there's simply no binding precedent from this court, from the Supreme Court, or from the Alabama Supreme Court that holds as much. The only case on which Mr. Williams relies that could arguably fill that decision, and that case just doesn't extend that far. In Yubo, the background, the district court had dismissed a malicious prosecution claim based on the statute of limitations and the defendants initially filed a brief simply defending that, that the claim was time-barred. It then filed a supplemental brief in which it attacked the sufficiency of Mr. Yubo's pleadings that alleged that he hadn't alleged lack of probable cause with enough specificity, that he hadn't pleaded facts to rebut the presumption of probable cause from his indictment, and he had not pleaded allegations sufficient that there was false information supporting the warrants. For the record, that supplemental brief is available at 1996 Westlaw 33-42-35-24. And so when we get to the we can know that that analysis is at best victim. One, because in footnote three of Yubo, the court expressly disclaimed deciding any issues other than the statute of limitations. And then when footnote seven addresses stated a claim for lack of probable cause, what it's discussing is not the issue we have here, because it wasn't presented. It was discussing the argument by the pleadings were insufficient, that he had not sufficiently alleged lack of probable cause or sufficiently pleaded facts to rebut probable cause arising from his indictment, or sufficiently alleged that they'd used false information. That was the issue. Beyond that, footnote seven, when it talks about probable cause, says it's deciding it for purposes of the statute of limitations. Hello? Hello? I'm here. I think we lost, I think we lost Mr. Brown. I think we lost the attorney. Yeah. Yeah. Make sure you pause this time, please. Yes. Yes. We need to get him back in the room. It still shows that he's connected. He hasn't disconnected yet. Well, presumably he would hear us saying that we don't hear him. Let me try to call him back. Judge Grant? Yeah. I did, I hope I didn't talk over you. I didn't hear your question in the Mastin argument. No, no, not at all. Not at all. Your Honor, I apologize for interrupting. It appears I've had a technical difficulty and been arguing to no one for a while. This is Mr. Rainey. Yes, you were. I apologize. That's okay. Two minutes and 19 seconds remaining. I'm not sure exactly where I was when I... It seems to me that the problem for the officers is that if they gave false information in support of an arrest warrant, that that's a clearly established constitutional violation. And regardless of UBO or anything else, the question about the any-crime rule, to me, it makes perfect sense to have the any-crime rule in the context of an arrest warrant. But it makes no sense to have it in the context of malicious prosecution, which involves very different interests. Not only the detention issues that go with being charged with a much more serious offense than with a less serious offense, but also the reputational harms that come with that. I just don't see where the any-crime rule, which we haven't decided necessarily, as you say, has any application in this context. But in terms of whether there was a clearly established constitutional violation, if they provided false information, that seems to me not close. Well, John, I can't agree with you. There's a reason we did not argue the violation element of qualified immunity in our brief. That was a strategic decision. The weight of authority supports that this would be perhaps a violation. But I don't think it's an obvious clarity situation. There's no precedent such as you, Bo, that sets this out. And you have this debate among the courts. Just pointing to example to then-Judge Gorsuch's decision in the Vandeway case out of the Tenth Circuit, where the Tenth Circuit recognized that this isn't perfectly clear because we don't necessarily treat, we treat this in the realm of possibility, that we would treat malicious prosecution claims this way. And you have some debate. And notably, the courts that are... The debate is not whether that's a constitutional violation. The debate is about whether he can rely on the fact that another crime could have been charged, a far less serious crime, than the one that was actually represented as the basis for the warrant. Your Honor, I agree. That is the debate. It's long been established that false statements can violate the Constitution. That's long been established. But this case is not about whether false statements can make a false statement. Your argument is that even though the officer would be clearly on notice, that giving false information to support an arrest warrant for very serious charges a constitutional violation, he can nevertheless escape liability because it's unsettled whether the fact that he could have asked for an arrest warrant for a far less serious charge is an undecided issue about that defeating a malicious prosecution claim? That's correct. It's not clearly established that he can be liable, even though it would be clearly established that false statements are a violation. It's not clear that he can be liable for making those statements. And just as an example, he could not be liable for making a false statement in the context of false arrest. So we just don't think it's clearly established. The availability of a malicious prosecution claim under these facts is not clearly established by precedent, and it doesn't fit within the obvious clarity assumption. I think we understand your argument. You saved some time for rebuttal. Let's hear from Mr. Riley. Thank you, Ron. Presiding Judge Pryor, Judges Graham and Antoon, may it please the court. My name is Richard Riley. I'm one of the lawyers for the appellee, Aubrey Williams. We request that the court affirm Judge Ott's order denying these officers summary judgment. As to the two issues that Mr. Ramey discussed, I'd like to very briefly discuss the no evidence argument and then turn to the issue of the clearly established prong of the qualified immunity affirmative defense. I think it was Judge Antoon that hit the nail on the head. Mr. Williams, the record reveals that he repeatedly, and as a matter of fact, emphatically, and maybe even because he realized that Officer Aguirre was so amped up and excited that he wasn't listening, the fact that he repeatedly said, I have a gun, I have a gun, I have a gun, negates any evidence of an overt act of attempted murder. That is an important fact. Another important fact, which was not brought up, is that the video is ambiguous in many ways, but it does clearly show Officer Aguirre pushing Mr. Williams over, pushing him over to the point where this would be a situation where, as Judge Grant said, gravity would make it fall out. There is clearly an issue of fact on that issue, and we're quite frankly surprised that it was even brought up on appeal. To turn to the other issue, the clearly established issue, two important arguments come to bear before we even discuss the 11th Circuit's case law. Number one, this issue just wasn't preserved below. The law of this circuit is that an insignificant recitation of black letter law is not tantamount to raising an issue, nor are glancing unsupported references. We had a very vigorous summary judgment briefing below. There was over 100 allegations of facts. Judge Ott applied the ping-pong method of establishing facts for summary judgment. The officers filed over 110 pages of briefs. We filed over 75 pages of opposition briefs, and then they filed 30 pages of reply briefs. Then we had a very vigorous motion to strike volley back and forth. Any other crime rule was not even directly discussed in the context of a false arrest claim. There was a couple of statements in the entirety of the brief, statements of fact that he could have been charged for having a pistol without a permit, but even the statute, the criminal statute, was never even cited. Then the malicious prosecution argument was only a couple of pages, and it was basically, hey, there's no problem with cause for the reasons stated above. I was completely surprised when Judge Ott discussed this issue at length, and Judge Ott is a very detail-oriented, very thorough, very calm and contemplative jurist. Well, I think there's a fair amount of case law, though, that when the district court addresses it in ruling against someone, that party who lost can attack the ruling against them on whatever grounds it was stated. That being stated, fair enough. The fact that Judge Ott addressed it, I think, puts it squarely before us. Fair enough. The next point is that this is not really a case where we need a precise 11th Circuit decision saying, quote, the any other crime rule does not apply to malicious prosecution cases. I think you would want it. As a matter of fact, I don't think it does. Well, Your Honor, I think that, yes. You're saying you don't need to have already had one? Not that you don't want us to say so here? I'm sorry, Judge Grant. Are you saying that you don't want us to make that holding here, or that you don't think that we need a pre-existing 11th Circuit case saying that in order to rule for you? You know, certainly I would like for you to make that statement that that is the law in the 11th Circuit based on UBO, based on Elmore's recognition of UBO, based on the 7th Circuit's decision and Holmes' recognition that UBO says it. You know, I think that Travis is right, that UBO does not say that the any other crime rule does not apply in malicious prosecution claims, but I think there's no other way to read that decision other than the fact that the court was saying that every crime has to be considered separately in a malicious prosecution context. But the bottom line is that Officer Holuska testified that if the facts of the case are that nobody pointed a gun at them, then it would be a violation of policy. It would also be immoral to charge him with that crime. And I think we've given, you know, the example in our briefs that, you know, an officer that sees Richard Riley walking through a restaurant and when somebody's back is turned, picking a nacho chip off their plate and eating it. Yes, that's theft, but then, you know, I get charged for burglary, you know, just because there's a crime that has been committed. I can go to the police headquarters and draw up an affidavit to support a burglary charge. Well, I think, let's get to the point that Judge Grant was raising a moment ago. Let's say we agree with you, the any crime rule. It makes sense to apply that in the arrest, false imprisonment context, not in the malicious prosecution context. Does that have to be clearly established? Your Honor, I don't think it's true. For them, for you to be able to defeat qualified immunity. It doesn't. And the reason is that the constitutional violation is the false statement. I think it is very dangerous to say that a civil offender... Well, the constitutional violation has to be the malicious prosecution in violation of the Fourth Amendment. And one of the things you have to prove in that is the giving of the false information, right? Yes, Your Honor. Yes, Your Honor, and lack of probable cause for the crime. But the point I was trying to make is that if the constitutional violation is clearly established, we cannot let the law be that a defendant can throw up any argument or throw up any alleged exception to the rule. The any other crime rule was designed for a cause of action based on false arrest. It was based on an apple. I know this is an absurd example, but there's no case that says the rule against perpetuities doesn't apply to a malicious prosecution claim either. Just because that argument's never been addressed by the Eleventh Circuit, should that prevent a righteous cause from going forward? This argument is... You know, if they had made an argument based on de minimis force for a completely different Fourth Amendment-type claim, would that argument, which, you know, would be absurd, but I think at least from what I'm hearing, at least one of the judges agrees with me that the any other crime rule extended to malicious prosecution would be absurd. You know, that just opens the floodgates to a construction of the clearly established wrong to be a point where we could never get there. A defendant could always come up with some kind of argument or bring up some kind of law... I think really what the point is is that there's long Supreme Court and Eleventh Circuit precedent that giving that false information in support of that process seizure is a violation of the Fourth Amendment, is a violation of the Constitution, and there's been no suggestion in any of the decisions that state that, that there's a requirement on the part of the plaintiff to prove the absence of probable cause for any crime. I think that is a very fair statement of the law. You know, we've got cases that we've cited all the way back to the Franks case, the Malley case. Yeah, Franks would be the start, right. Right, and, you know, on into the present. So, you know, I think that if we look at the scenario, as this court has recently in the last five or six years, this court has made it a point, at least I believe, in my humble reading of your Honor's cases, that having a precise case is important in situations where an officer might say, I just didn't, I didn't understand this. And I think we've got to really look and say, would any reasonable officer think that they could just make up any fact in support of any crime and charge a person with that crime just because they had some probable cause for another crime? And one thing we haven't discussed is that, you know, this crime was never charged. It wasn't like that having a pistol without a permit is a lesser included offense of attempted murder. These are two drastically different crimes. Yes, they both involve a weapon in some sense. But, you know, Mr. Williams' maximum, his maximum punishment for having a pistol without a permit would be one year and a fine. I don't know if any judges would give him that long, but that would be the maximum. But he spent over two years seized for one of the worst crimes imaginable, not only attempted murder, but an attempted murder of a police officer. And so the damage goes far beyond, you know, the very, I don't know, every crime is serious, but the susceptibility of abuse is so great here. It is so great here that this argument, Your Honor should reject that argument, find that the facts of this situation establish a clearly established constitutional violation. And if no member of the court has any questions, then I relinquish the rest of my time. Okay. Thank you, Mr. Riley. Mr. Ramey, are you still with us? I am. Again, this is Mr. Ramey for the appellants. Okay. Do you see the point I raised? It seems to me that there's plenty of case law, starting with Farmer, that say quite clearly that the giving of the false information in support of the bringing of criminal charges is a constitutional violation. Your Honor, I agree there's a line of cases saying that it's a violation of the law to make false statements and fabricate evidence. Yes, but there's no suggestion in any of that that there's a burden on the part of the plaintiff to prove the absence of probable cause for any crime. It is true that we have some case laws that say the application of the any crime exception that clearly applies in the false arrest and false imprisonment context is an unsettled issue in qualified immunity. But that does not mean that there's any suggestion that this is not a clearly established constitutional violation. Well, Your Honor, what I would... It has no application. My response would be is that this is a doctrine that we use in related contexts under the Fourth Amendment, and we also have plenty of case law saying that it's a constitutional violation to use excessive force. But in the qualified immunity analysis, we have to drill down to the specific facts of each individual case. And to define the right as the right against false statements is... Yeah, but this isn't about the facts. I mean, if there is evidence that they were lying to support the charges that were brought against the plaintiff here on the charge of attempted murder, there's no ambiguity about facts. Your Honor, that seems to me that it would be equally true in the context of false arrest, but yet we treat false arrest very differently. And I think it's of note that the other decisions discussing this have not treated the right this way. They have looked at it as the possibility that this not only applies in the false arrest context, but that it equally applies in the malicious prosecution context. And I think if the court just defines the violation and being subjected to liability as being based on just making a false statement, it runs the risk of defining the constitutional right at too high a level, which is... Well, it's not just the false information. It would have to be material. But if that's satisfied, which it clearly would be here, it seems to me, that the case law is long and well-established that that constitutes a constitutional violation, it seems to me. I would disagree to the extent that in this context it's not clear that the officers can be subject to liability because there is probable cause to charge Mr Williams with a second crime. And that's the way we treat false arrest. When we hear about the complaints about qualified immunity here, the officers surely know that it's unconstitutional to give false testimony in support of a prosecution. But the argument is that they should get out of that liability because there's a technical legal argument that hasn't yet been considered or faced by this court? Your Honor, that's sort of the way qualified immunity works. If this any other crime rule is a bad rule, and it may very well be a bad rule, that it is well within this court's discretion to clearly establish in this case, moving forward, that any other crime rule does not apply in the context of malicious prosecution, although it does in the context of the precursor to malicious prosecution, which is false arrest. I assume my time has probably expired by this point. It just did expire, Mr. Ramey. Judge Anton, do you have a question? I just want to make sure I understand this argument. As I understand what you're saying, it's not a question that making a false statement is clearly a constitutional violation that is the problem. You're focusing... You're saying there has to be clearly established authority that establishes liability of finding a fault. Is that what you're saying? In order... My understanding of qualified immunity doctrine is that there needs to be a decision that puts every reasonable officer on notice, that it's beyond debate, it is completely clear. So it's not liability. They are subject to liability for engaging in misconduct. See, but isn't really what the law is is that the plaintiff has to establish... Once the officer establishes there's no dispute, was exercising discretionary authority, the plaintiff has to establish that there's a constitutional violation and that that violation was clearly established. Not that the officer knew he could be subjected to liability for it, but that there was a constitutional violation. And I may be stating it poorly, but if the rule was simply that all that the plaintiff had to establish was that the officer had made a false statement because false statements are a constitutional violation, then the any other crimes application to false arrest claims would be obviously wrong. But we do apply that in the context of false arrest. So the law has to be for the false arrest cases to be correct. The false arrest and false imprisonment cases, though, is about a discrete event. Is it a constitutional violation to arrest this person without probable cause? And it really doesn't matter what the probable cause is for because if you have probable cause for any crime, then it can't be as an objective matter that it was a constitutional violation to arrest them for that discrete event. The malicious prosecution problem, it seems to me, Mr. Ramey, is a very different kind of problem. And the law is fairly, is clearly established, has been since former, that the supplying of that false information to support a malicious prosecution is a constitutional violation. Every officer would know that. Judge, I agree that there is that distinction between, there is this distinction between false arrest and malicious prosecution. What I guess, what I'm saying is that that distinction for this purpose has not been clearly established. And without the clear establishment of that distinction, officers of Gary and Hluska should be entitled to qualified immunity. Judge Anton, did you have your question answered? Yes, sir. I do. Your Honor, I hate to prevail on the court's time, but just because of the cutoff, I wanted to be certain. We have your argument, Mr. Ramey. Thank you, sir. We've gone far over and we appreciate your help. And we are adjourned for the week.